UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| TIMOTHY L. HOWARD, )<br>)<br>    Plaintiff, )<br>)<br>V. )<br>)<br>ANDREW SAUL, )<br>Commissioner of Social Security, )<br>)<br>    Defendant, ) | Civil Action No. 7: 16-051-DCR | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

| | | |
|---|---|---|
| CAROL GRIFFITH, )<br>)<br>    Plaintiff, )<br>)<br>V. )<br>)<br>ANDREW SAUL, )<br>Commissioner of Social Security, )<br>)<br>    Defendant, ) | Civil Action No. 7: 16-101-DCR | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

| | | |
|---|---|---|
| ROBERT MARTIN, )<br>)<br>    Plaintiff, )<br>)<br>V. )<br>)<br>ANDREW SAUL, )<br>Commissioner of Social Security, )<br>)<br>    Defendant, ) | Civil Action No. 7: 16-111-DCR | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

| | |
|---|---|
| PATRICIA LANE RICHARDS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| V. | )     Civil Action No. 7: 16-200-DCR |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant, | ) |

                      \*\*\*    \*\*\*    \*\*\*    \*\*\*

| | |
|---|---|
| REGINA REED, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| V. | )     Civil Action No. 7: 16-241-DCR |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant, | ) |

                      \*\*\*    \*\*\*    \*\*\*    \*\*\*

| | |
|---|---|
| ROSS CLAYTON FLEMING, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| V. | )     Civil Action No. 7: 16-281-DCR |
| | ) |
| ANDREW SAUL, Commissioner of Social Security, | ) |
| | ) |
|     Defendant, | ) |

                      \*\*\*    \*\*\*    \*\*\*    \*\*\*

| | |
|---|---|
| ELIZABETH WRIGHT, )<br>)<br>    Plaintiff, )<br>)<br>V. )<br>)<br>ANDREW SAUL, Commissioner of Social )<br>Security, )<br>)<br>    Defendant, ) | Civil Action No. 7: 17-020-DCR |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

| | |
|---|---|
| TERESA AKERS, )<br>)<br>    Plaintiff, )<br>)<br>V. )<br>)<br>ANDREW SAUL, Commissioner of Social )<br>Security, )<br>)<br>    Defendant, ) | Civil Action No. 7: 17-031-DCR |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

| | |
|---|---|
| STEPHEN KIDD, )<br>)<br>    Plaintiff, )<br>)<br>V. )<br>)<br>ANDREW SAUL, Commissioner of Social )<br>Security, )<br>)<br>    Defendant. ) | Civil Action No. 7: 17-035-DCR |

**MEMORANDUM OPINION AND ORDER DENYING ATTORNEY'S FEES**

# I.

Once known as "Mr. Social Security," former attorney Eric Conn assisted thousands of individuals in obtaining Social Security disability benefits. But Conn's overwhelming success was too good to be true. His results were not the product of skill or hard work. Instead, he obtained benefits for a number of clients through the largest Social Security fraud in the history of the benefits program.

The scheme was not that elaborate. Beginning in at least 2004 and continuing through 2011, Conn paid a group of doctors to provide medical and psychological reports, indicating that his clients were unable to work, regardless of their actual abilities.[1] To further ensure his clients' success in obtaining benefits (and his resulting ability to collect a fee), Conn paid Administrative Law Judge ("ALJ") David Daugherty to assign these cases to himself and then issue favorable rulings.[2]

The Social Security Administration's ("SSA") Office of the Inspector General ("OIG") eventually caught wind of Conn's scheme and began to investigate. On July 2, 2014, the OIG

---

[1] These doctors were identified as Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., and David P. Herr, D.O. A jury convicted Adkins of conspiring to commit mail and wire fraud, mail fraud, wire fraud, and making false statements to the SSA. He was sentenced by the undersigned to 300 months' imprisonment. [*See* Lexington Criminal Action No. 5: 16-022-DCR.]

[2] Conn pleaded guilty to theft of government money and paying illegal gratuities and was sentenced by the undersigned to 144 months' imprisonment. [*See* Lexington Criminal Action No. 5: 17-CR-043-DCR.] He subsequently pleaded guilty conspiring to defraud the United States, conspiring to escape, and conspiring to retaliate against a witness and was sentenced by the undersigned to 180 months' imprisonment, to run consecutively to the 144-month sentence imposed in 5: 17-CR-043. [*See* Lexington Criminal Action No. 5: 18-CR-059-DCR.]

Daugherty pleaded guilty to two counts of receiving illegal gratuities and was sentenced by the undersigned to 48 months' imprisonment. [*See* Lexington Criminal Action No. 5: 17-CR-066-DCR.]

notified the SSA's General Counsel that it had reason to believe that 1,787 applications submitted by Conn involved fraud.  For reasons unknown, the OIG provided this information with the understanding that the SSA would not take any action against these claimants until it received further notice from OIG.

On May 12, 2015, the OIG notified the Commissioner of Social Security that the Agency could move forward with its administrative processing of the redeterminations of the 1,787 individuals whose names were previously provided by the OIG to the Agency on July 2, 2014.  [*See, e.g.*, Pikeville Civil Action No. 7: 16-051; Record No. 12-1, p. 9]  The OIG specifically advised that it had "reason to believe that Mr. Conn or his firm submitted pre-completed 'template' Residual Functional Capacity forms purportedly from [the four doctors identified above], dated between January 2007 and May 2011, in support of the individuals' applications for benefits." *Id.*

The SSA sent letters to the affected claimants on May 18, 2015, informing them that it was required to redetermine their eligibility for benefits under 42 U.S.C. §§ 405(u) and 1383(e)(7).  The SSA advised them that it was not permitted to consider any evidence submitted by the physicians believed to have been involved in the fraud.  The SSA further explained that the Appeals Council had reviewed the affected cases.  Many individuals still qualified for benefits after the tainted evidence was excluded.  However, the plaintiffs were all informed that, after excluding the evidence from the doctors involved with Conn, there was insufficient evidence to support a finding of disability.  The plaintiffs were given time to submit additional evidence to the Appeals Council, demonstrating that they were disabled at the time their applications for benefits were initially approved.  And the Appeals Council

ultimately determined that there was insufficient evidence to support the prior ALJ's findings of disability.

The cases were then remanded to new ALJs for redetermination proceedings. The redetermination proceedings included: (1) a hearing before a neutral decisionmaker; (2) an opportunity to testify and submit any evidence that was new, material, and related to the period at issue (other than evidence from the four identified providers); and (3) if requested, assistance developing records that were new, material, and related to the time period at issue. [*See, e.g.*, Pikeville Civil Action No. 7: 16-051; Record No. 12-1, p. 3] At this point, many of the affected claimants were adjudicated disabled and continued receiving benefits. However, in the plaintiffs' cases, the new ALJ found that there was insufficient evidence to support the original disability determination and their benefits were terminated. The Appeals Council declined to reconsider the ALJs' decisions, and the denials became final decisions of the Commissioner.

Many of the claimants who lost their benefits, including the plaintiffs, filed suit in this Court, claiming that the SSA's redetermination process was unlawful. The cases were randomly assigned to various judges. On October 12, 2016, then-United States District Judge Amul R. Thapar issued an opinion concluding that the SSA's redetermination procedure violated the Due Process Clause of the Fifth Amendment to the United States Constitution. *Hicks v. Colvin*, 214 F. Supp. 3d 627 (E.D. Ky. 2016). The undersigned issued a conflicting decision on November 15, 2016, rejecting the plaintiffs' claims that the redetermination procedure violated the Equal Protection and Due Process clauses, the Social Security Act, and the Administrative Procedure Act ("APA"). *Carter v. Colvin*, 220 F. Supp. 3d 789 (E.D. Ky. 2016). Approximately one month later, United States District Judge Joseph M. Hood issued

an opinion consistent with that of the undersigned. *Perkins v. Colvin*, 224 F. Supp. 3d 575 (E.D. Ky. 2016).

The plaintiffs in *Carter* and *Perkins* were permitted to take an interlocutory appeal of this Court's decisions in favor of the SSA. Shortly thereafter, the SSA filed a notice of appeal in *Hicks*. These cases were consolidated in the United States Court of Appeals for the Sixth Circuit, which issued a decision on November 21, 2018.[3] *Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786 (6th Cir. 2018). A majority of the panel concluded that the SSA's redetermination process violated the plaintiffs' due process rights because it did not disclose the evidence of fraud to the plaintiffs and give them an opportunity to rebut it.[4] *Id.* at 797. It also determined that the redetermination procedure was arbitrary and capricious and violated the APA's formal-adjudication requirements. Accordingly, the Sixth Circuit reversed this Court's decisions in *Carter* and *Perkins* and remanded the cases for further proceedings. In turn, this Court remanded the affected cases to the SSA under sentence four of 42 U.S.C. § 405(g) for redetermination consistent with the Sixth Circuit's ruling.

## II.

Following remand to the SSA, the plaintiffs seek attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.[5] The EAJA provides, in relevant part:

---

[3] Plaintiffs Timothy Howard, Carolyn Griffith, and Robert Martin were plaintiffs in *Carter*. The remaining plaintiffs filed Complaints alleging similar claims, but their cases were stayed pending the outcome of *Hicks*.

[4] Judge John Rogers dissented, concluding that the redetermination procedure did not violate due process or the APA.

[5] The plaintiffs originally requested attorney's fees in the Sixth Circuit. However, the court granted the Commissioner's motion to remand this issue to this Court.

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

§ 2412(d)(1)(A).

Accordingly, the Court must assess the fee petition in light of the following factors: whether the plaintiff was a prevailing party; whether the government's position was substantially justified; and whether any special circumstances exist that make an award unjust. *I.N.S. v. Jean*, 496 U.S. 154, 158 (1990); *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 725 (6th Cir. 2014). In analyzing whether the requested fee is appropriate, the Court takes a "fresh look at the case from an EAJA perspective, and reach a judgment on fees and expenses independent from the ultimate merits decision." *Phillips v. Astrue*, No. 2:08-CV-048, 2010 WL 625371 (E.D. Tenn. Feb. 17, 2010) (citing *Fed. Election Comm'r v. Rose*, 806 F.2d 1081, 1087-90 (D.C. Cir. 1986)).

It is undisputed that the plaintiffs are prevailing parties within the meaning of the EAJA. A prevailing party is one who obtains a "material alteration of the legal relationship of the parties" through a "judgment on the merits." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001). A remand to the SSA under sentence four of 42 U.S.C. § 405(g) satisfies this definition. *See Turner v. Comm'r of Soc. Sec.*, 680 F.3d 721, 723 (6th Cir. 2012) (citing *Shalala v. Schaefer*, 509 U.S. 292, 300 (1993)). However, this is only a threshold determination; the Court must next determine whether the SSA's position was substantially justified.

The government has the burden of establishing substantial justification. *Scarborough v. Principi*, 541 U.S. 401, 408 (2004). "Substantially justified means justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Marshall v. Comm'r of Soc. Sec.*, 444 F.3d 837, 842 (6th Cir. 2006) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). In other words, a "[a] position can be justified even though it is not correct and can be justified if a reasonable person could think it correct, that is, that it has a reasonable basis in law and fact." *Gray v. Comm'r of Soc. Sec.*, 23 F. App'x 436, 436 (6th Cir. 2001); *Noble v. Barnhart*, 230 F. App'x 517, 518 (6th Cir. 2007) (An erroneous position is substantially justified "if there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action."). The Court reviews the SSA's position in its entirety. "While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole." *Jean*, 496 U.S. at 161-62.

**A.**

In examining the Commissioner's position, the Court begins with the statutes that govern the redetermination process. Section 405(u) of Title 42 of the United States Code outlines the procedure the SSA must apply in redetermining entitlement to benefits when there is reason to believe that fraud or similar fault was involved in an application. It provides:

> (1) (A) The Commissioner of Social Security shall immediately redetermine the entitlement of individuals to monthly insurance benefits under this subchapter if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits, unless a United States attorney, or equivalent State prosecutor, with jurisdiction over potential or actual related criminal cases, certifies, in writing, that there is a substantial risk that such action by the Commissioner of Social Security with regard to beneficiaries in a particular investigation would jeopardize the criminal prosecution of a person involved in suspected fraud.

  (B) When redetermining the entitlement, or making an initial determination of entitlement, of an individual under this subchapter, the Commissioner of Social Security shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence.

 (2) For purposes of paragraph (1), similar fault is involved with respect to a determination if—
  (A) an incorrect or incomplete statement that is material to the determination is knowingly made; or
  (B) information that is material to the determination is knowingly concealed.

 (3) If, after redetermining pursuant to this subsection the entitlement of an individual to monthly insurance benefits, the Commissioner of Social Security determines that there is insufficient evidence to support such entitlement, the Commissioner of Social Security may terminate such entitlement and may treat benefits paid on the basis of such insufficient evidence as overpayments.[6]

Since the statutes provide only a framework for the redetermination process, the SSA was left to fill in the details. In February 2016, the SSA's Office of Disability Adjudication and Review ("ODAR") published internal guidance to implement the redetermination procedure outlined in 42 U.S.C. §§ 405(u) and 1383(e)(7). HALLEX I-1-3-25 (S.S.A. Feb. 25, 2016). ODAR noted that, consistent with §§ 405(u) and 1387(e)(7), the SSA must disregard evidence when there is reason to believe that fraud or similar fault was involving in the providing of the evidence. The SSA was to initially consider the evidence previously submitted (excluding the evidence tainted by fraud) to determine whether a claimant was still entitled to disability benefits. Claimants were permitted to submit additional evidence in support of their applications to the Appeals Council.

Claimants whose files did not contain sufficient evidence to support a finding of disability were granted a hearing before a new ALJ where they were allowed to develop and

---

[6] The language of 42 U.S.C. 1383(e)(7), which governs Title XVI claims, is substantially similar.

introduce new evidence relating to the period at issue. When the need for redetermination was based solely on the SSA's finding of fraud or similar fault, claimants could challenge exclusion of the allegedly fraudulent evidence. However, when redetermination was based on an OIG referral or information from a law enforcement investigation, adjudicators did not have discretion to consider whether the fraudulent evidence should be disregarded.

**B.**

The Due Process Clause provides that no one shall be deprived of life, liberty, or property without due process of law. U.S. CONST. amend. V. It is well-established that continued receipt of social security benefits is a statutorily-created property interest protected by the Due Process Clause. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Difford v. Sec'y of Health & Human Servs.*, 910 F.2d 1316, 1320 (6th Cir. 1990).

The Sixth Circuit concluded that the plaintiffs were entitled to challenge the findings of fraud based on an "immutable principle" that pre-dates *Mathews*. *Hicks*, 909 F.3d at 797. Specifically, the court stated that "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is true." *Hicks*, 909 F.3d at 797 (quoting *Greene v. McElroy*, 360 U.S. 474, 496 (1959)); *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004)). According to the Sixth Circuit, this includes the opportunity to challenge "preliminary findings" such as the OIG's finding of fraud. *Id.* at 798.

Despite the Sixth Circuit's conclusion, the Commissioner was substantially justified in believing that SSA's redetermination process passed muster under *Mathews* and therefore comported with due process. After all, unlike *Greene* and *Hamdi*, *Mathews* was a due process

- 11 -

challenge to the adequacy of administrative procedures used to terminate Social Security disability benefits. Additionally, unlike *Greene* and *Hamdi*, the plaintiffs here were not accused of wrongful conduct. *Mathews* presents no hard line rule requiring the SSA to disclose all information related to a claimant's case. Instead, it teaches that due process is a *flexible concept* which requires consideration of three factors: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional safeguards; and (3) the government's interest, including the fiscal and administrative burden that additional procedures would entail. 424 U.S. at 334-35.

The Sixth Circuit's conclusion that the SSA's redetermination process failed under *Mathews* was open to reasonable disagreement. While it is undisputed that the plaintiffs had a strong interest in retaining benefits acquired by then-attorney Conn, the SSA also had a strong interest in quickly discontinuing benefits to people who were not actually disabled. Not only was the public fisc threatened, but the integrity and public perception of the SSA is jeopardized in such a scenario. Further, it is likely that the additional proceedings requested would place a significant administrative burden on the SSA and the OIG.

The SSA reasonably maintained that the risk of erroneous deprivation was low throughout the proceedings. The plaintiffs were given multiple opportunities to provide substitute evidence of their disabilities. After being advised that there was reason to believe that fraud or similar fault was involved in their applications, the claimants were permitted to submit additional evidence to the Appeals Council. And if the claimants did not qualify for benefits at that point, they received a hearing before a new ALJ and were again allowed to supplement their records with additional evidence of disability. Further, the SSA assisted the

plaintiffs in developing evidence when requested. If the SSA determined that the claimants were not disabled at the time of their original applications, they could apply for a waiver which would relieve them of the obligation to pay back past payments, as long as they were not at fault for the fraud. *See* 20 C.F.R. §§ 404.506; 416.550.

The SSA also was justified in determining that the relative benefit of disclosing the information to the claimants was low. As a practical matter, it would be very difficult for the claimants to challenge the OIG's conclusions. The plaintiffs were not alleged to have been involved in the fraud, so it is unlikely they would have any firsthand knowledge of the events. Conn, Adkins, and Daugherty, on the other hand, were convicted of the fraudulent conduct at issue. Conn admitted in his plea agreement that the evaluations he submitted to SSA from the four doctors (including IQ tests administered by Adkins) were falsified to make the claimants look more disabled. [*See* Lexington Criminal Action No. 5: 18-CR-059, Record No. 7-1.]

Finally, it is unlikely that these doctors' opinions and reports would have been entitled to much, if any, weight had they been considered. None of the doctors were the plaintiffs' treating physician and, accordingly, their opinions would not receive controlling weight. *See* 20 C.F.R. §§ 1527; 416.927. In Conn's plea agreement, the reports are described as "perfunctory" and "falsified," indicating further that such reports would be entitled to little weight, regardless of what a claimant might have to say about them. *See Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 565 (6th Cir 2016) ("Nor is an administrative law judge bound by the conclusory statements of physicians, particularly where the statements are unsupported by detailed objective criteria and documentation in the medical record, and are inconsistent with the rest of the evidence."); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). When determining how much weight to give medical source statements, ALJs are permitted to

consider "any factors . . . of which [the SSA] is aware, which tend to support or contradict the medical opinion." 20 C.F.R. §§ 404.1527 (c)(6); 416.927(c)(6). Based on the facts that have been established in criminal proceedings, it is likely that an ALJ would look askance at any report submitted by the physicians involved in this matter.

Put simply, the SSA disregarded the evidence believed to be fraudulent as commanded in 42 U.S.C. §§ 405(u) and 1383(e)(7). And based on the foregoing, it was substantially justified in believing that its redetermination process provided the plaintiffs with due process of law.

## C.

The SSA also was substantially justified in its position with respect to the Administrative Procedure Act. While the Sixth Circuit concluded that the redetermination process was subject to formal adjudication procedures allowing the plaintiffs to rebut the assertions of fraud, the defendant reasonably believed that it was not. The APA's formal adjudication requirement applies in "every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing." 5 U.S.C. § 554(a). Sections 405(u) and 1383(e)(7) say nothing about a hearing. The SSA acted reasonably in concluding that it was not required to conduct hearings pursuant to § 405(b)(1), since that provision deals with "any individual *applying* for a payment." This reading also is supported by the legislative history of sections 405(u) and 1383(e)(7), which suggests that Congress desired a streamlined process for expeditiously terminating fraudulently obtained benefits.[7]

---

[7] 140 CONST. REC. H4750-03, 1994 WL 274789 (daily ed. June 21, 1994) (statements of Rep. Santorum).

Further, the redetermination statutes direct the SSA to "immediately" redetermine an individual's eligibility for benefits if there is reason to believe that fraud or similar fault was involved in that individual's application for benefits. This directive suggests that a hearing requirement, which would prolong the redetermination process, should not be read into the statutes. Based on the foregoing, the SSA was substantially justified in concluding that, when redetermining the plaintiffs' benefits, it was not required to conduct a formal adjudication hearing under the APA.

Finally, the Sixth Circuit determined that the SSA's disparate treatment of fraud allegations based on the originating source was arbitrary and capricious. *Hicks*, 909 F.3d at 806-09. However, this court notes that the plaintiffs did not raise this issue in their complaints, in their responses to the Commissioner's motions to dismiss, or in any other meaningful way prior to their appeal. Arguments raised for the first time on appeal ordinarily are forfeited. *Swanigan v. FCA US LLC*, No. 18-2303, 2019 WL 4309672, at *5 (6th Cir. Sept. 12, 2019) ("And this court also deems issues not raised in response to dispositive motions forfeited") (citing *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540, 545 (6th Cir. 2014)).

The redetermination procedure allowed ALJs to entertain claimants' objections to the disregarding of evidence when a the SSA's finding of fraud came from its own investigation. However, if the referral came from the OIG or was based on a law enforcement investigation, the ALJ had no discretion to consider whether the evidence should be disregarded. The Sixth Circuit concluded that this practice was arbitrary and capricious because agencies may not "distinguish between similarly-situated claimants based on circumstances entirely outside their control." *Hicks*, 909 F.3d 808.

A judicial finding that an agency's action was arbitrary and capricious does not necessarily mean that the agency's position was not substantially justified. *Federal Election Comm'n v. Rose*, 806 F.2d 1081, 1089 (D.C. Cir. 1986). An agency's "unjustifiably disparate treatment of two similarly situated parties" may not be substantially justified, but the agency's mere failure to explain its rationale for doing so does not require this same conclusion. *Id.* While it may have been explained *post hoc*, the agency provided a sound rationale for this rule. To wit, findings of fraud by the SSA are more likely to be individualized and more amenable to challenge by the claimant. Findings of fraud by the OIG or a law enforcement entity are more likely to be widespread and systematic, making it less likely that the claimant could successfully dispute the fraud, but significantly increasing the administrative burden on the agencies involved.

**D.**

The government's position is not substantially justified simply because it prevailed in this Court and sought to uphold the decision on appeal. *See Sigmon Fuel Co. v. Tennessee Valley Auth.*, 754 F.2d 162, 167 (6th Cir. 1985). However, it is more likely that the government's position will have been substantially justified when "it lost because an unsettled question was resolved unfavorably." *Taucher v. Brown-Hruska*, 296 F.3d 1168, 1174 (D.C. Cir. 2005). The existence of a split within this district and Judge Rogers' vigorous dissent in *Hicks* demonstrate that "a reasonable person could disagree" about the propriety of the SSA's actions. *See In re Long-Distance Telephone Serv. Fed. Excise Tax Refund Litigation*, 751 F.3d 629, 636 (D.C. Cir. 2014). The decisions of other district courts also indicate that this case presented unsettled questions upon which reasonable minds could disagree. *Compare Kirk v. Berryhill*, 388 F. Supp. 3d 652 (S.D.S.C. 2019); *Tyler J. v. Saul*, No. 17 CV 50090, 2019 WL

3716817 (N.D. Ill. Aug. 7, 2019) (striking down redetermination process); and *Gonzalez v. Comm'r of Soc. Sec.*, No. 18-1222, 2019 WL 4233925 (D.P.R. Sept. 6, 2019) (non-Conn decision striking down process) *with Taylor v. Berryhill*, No. 1:16cv00044, 2018 WL 1003755 (W.D. Va. Feb. 21, 2018); *Smith v. Comm'r of Soc. Sec.*, No. 6:17-cv-1084, 2017 WL 5256872 (M.D. Fla. Nov. 13, 2017); and *Robertson v. Berryhill*, No. 3:16-3846, 2017 WL 1170873 (S.D.W. Va. Mar. 28, 2017) (upholding redetermination process).

Finally, some of the plaintiffs contend that the defendant's effort to remand these matters under 42 U.S.C. § 405(g) sentence six, without reinstating benefits, was without substantial justification. The Court cannot agree. Although the case ultimately was remanded under sentence four, the Commissioner reasonably argued that it should be remanded under sentence six for further development of evidence. Although it would not have been a typical sentence six remand, the unique facts presented did not fall squarely under either type of remand. The Court also notes that the Commissioner eventually withdrew this argument and consented to the affected cases being remanded under sentence four.

"[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." *Jean*, 496 U.S. at 163-64. However, it is not intended "to chill the government's right to litigate or to subject the public fisc to added risk of loss when the government chooses to litigate reasonably substantiated positions." *Roanoke River Basin Ass'n v.* Hudson, 991 F.2d 132, 139 (4th Cir. 1993).

Based on the foregoing, it is hereby

**ORDERED** that the plaintiffs' motions for attorney's fees under the EAJA [Pikeville Civil Action No. 7: 16-051; Record No. 43] [Pikeville Civil Action No. 7: 16-101; Record No. 63] [Pikeville Civil Action No. 7: 16-111; Record No. 38] [Pikeville Civil Action No. 7: 16-

200; Record No. 34] [Pikeville Civil Action No. 7: 16-241; Record No. 39] [Pikeville Civil Action No. 7: 16-281; Record No. 38] [Pikeville Civil Action No. 7: 17-020; Record No. 37] [Pikeville Civil Action No. 7: 17-031; Record No. 32] [Pikeville Civil Action No. 7: 17-035; Record No. 30] and motion for costs [Pikeville Civil Action No. 7: 111; Record No. 38] are **DENIED**.

Dated: October 15, 2019.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky